Case 4:20-cv-02871   Document 38   Filed on 12/05/22 in TXSD   Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
December 05, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| UNITED STATES, *ex rel.* NORMA BRISENO, § § § | |
| Plaintiffs. § | |
| § | CIVIL ACTION NO. 4:20-cv-02871 |
| V. § § | |
| HILLCROFT MEDICAL CLINIC ASSOCIATION, § § § | |
| Defendant. § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Norma Briseno ("Briseno") brings this *qui tam* lawsuit against Defendant Hillcroft Medical Clinic Association ("Hillcroft"), alleging that Hillcroft fraudulently billed federal healthcare programs for services that it did not provide in violation of the False Claims Act ("FCA"). Briseno also alleges that Hillcroft retaliated against her for complaining about the fraudulent claims.

Relying on Federal Rules of Civil Procedure 9(b) and 12(b)(6), Hillcroft has filed a Motion to Dismiss all of Briseno's claims. Having reviewed the briefing and the applicable law, I recommend that the motion be **GRANTED**.

## THE FALSE CLAIMS ACT

"First passed at the behest of President Lincoln in 1863 to stem widespread fraud by private Union Army suppliers in Civil War defense contracts," the FCA "is intended to protect the Treasury against the hungry and unscrupulous host that encompasses it on every side." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 184 (5th Cir. 2009) (cleaned up). To that end, the FCA imposes liability on "any person" who, among other things, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States government, or who "knowingly makes, uses, or causes to be made or used, a false

record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A)–(B).

The FCA permits a private person, known as a "relator," to bring an action in the name of the United States for a violation of the FCA. *See id.* § 3730(b)(1). Such lawsuits are commonly referred to as *qui tam* suits. "*Qui tam* is short for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means who pursues this action on our Lord the King's behalf as well as his own." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 768 n.1 (2000) (quotation omitted). Relators have standing to sue in *qui tam* actions because "a *qui tam* relator is, in effect, suing as a *partial* assignee of the United States." *Id.* at 773 n.4.

The FCA encourages private citizens to report fraud by promising them a percentage of any eventual recovery obtained through a final judgment or settlement. *See* 31 U.S.C. § 3730(d). All told, *qui tam* suits have netted the government more than $60 billion in recoveries since 1986 and are averaging several billion dollars a year in recent years. *See* JOHN T. BOESE & DOUGLAS W. BARUCH, CIVIL FALSE CLAIMS AND QUI TAM ACTIONS § 3 (5th ed. 2021).

"After the relator has filed suit, the action is sealed for sixty days while the government decides whether to intervene." *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 325 n.3 (5th Cir. 2011) (citing 31 U.S.C. § 3730(b)(2)). "If the government chooses not to intervene, the relator may proceed independently." *Id.* (citing 31 U.S.C. § 3730(e)(4)(B)). If the government intervenes and takes over the action, the relator may receive 15 to 25 percent of the proceeds of the action or settlement. 31 U.S.C. § 3730(d)(1). If the government declines to intervene, the relator may receive 25 to 30 percent. *Id.* § 3730(d)(2).

## BACKGROUND

Hillcroft provides primary and specialized healthcare services at offices in Houston and Sugar Land, Texas. Briseno worked for Hillcroft as a billing specialist in the Houston office from February 13, 2018 to March 6, 2019. Her job

responsibilities included creating and sending invoices to Medicare and private insurance providers for payment.

During her roughly 13 months of employment at Hillcroft, Briseno alleges that she discovered hundreds of false claims submitted by Hillcroft to Medicare and other insurance providers for payment. In particular, Briseno asserts that the claims included "invoices for services not provided on the date invoiced, invoices for services that [Hillcroft] never provided, invoices with incorrect [National Provider Identifier numbers], invoices by physician providers who are not the providers providing the medical services invoiced for, and invoices for services not provided at the locations indicated in the invoices." Dkt. 27 at 5. As a result, Briseno posits that Medicare paid Hillcroft "hundreds of thousands of dollars for services that were not authorized." *Id.* at 10. In the Amended Complaint, Briseno provides a list of 50 allegedly false claims submitted between January 27, 2016 and June 18, 2018. She alleges that this list is just "the tip of the iceberg." *Id.* at 5.

By and large, the list provided by Briseno concerns services allegedly not provided by Hillcroft. In describing the alleged false claims submitted by Hillcroft, Briseno uses pretty much the same format: date, number of services billed to Medicare but not provided, and internal claim number. For example:

> On January 28, 2016, [Hillcroft] billed Medicare for 4 services that it did not provide. [Hillcroft]'s internal claim number for this fraudulent billing is 498498.
>
> On April 14, 2016, [Hillcroft] billed Medicare for 5 services that it did not provide. [Hillcroft]'s internal claim number for this fraudulent billing is 523655.

*Id.*

There is one example Briseno offers that describes services billed by Hillcroft but provided by another entity:

> On January 27, 2016 [Hillcroft] billed Medicare for 3 services that it did not provide, but instead was provided by a separate medical services provider. [Hillcroft]'s internal claim number for this fraudulent billing is 498209.

3

*Id.*

The last example provided by Briseno alleges that Hillcroft billed Medicare for services provided on a different date than the date identified in the invoice:

> On June 18, 2018, [Hillcroft] billed Medicare for services not performed on that date. [Hillcroft]'s internal claim number for this fraudulent billing is 792194.

*Id.* at 9.

Briseno claims that she emailed her manager about certain instances of fraudulent billing on several occasions in January and February 2019, but her concerns were "repeatedly ignored." *Id.* at 10. Briseno does not provide any details regarding the substance of the emails sent to her manager. Briseno also alleges that she "sent a letter to [Hillcroft's] Human Resources Department and its [chief operating officer] on February 15, 2019, again alerting [Hillcroft] of the fraudulent billing alleged in this action." *Id.* Again, Briseno does not provide any additional details concerning the contents of the letter.

Instead of addressing the issues that Briseno raised in her correspondence, Hillcroft allegedly "began to micromanage [Briseno], abruptly increased her workload, and became highly critical of [Briseno]'s work performance for the first time in her tenure in an attempt to force her out." *Id.* The Amended Complaint alleges that Hillcroft constructively discharged Briseno "after she could no longer bear the increasingly hostile and retaliatory work environment." *Id.*

On August 14, 2020, Briseno filed this *qui tam* suit. The United States has declined to intervene. As a result of the conduct described above, Briseno alleges that Hillcroft violated the FCA by (1) knowingly presenting a false claim for payment in violation of 31 U.S.C. § 3729(a)(1)(A), "in addition to other enumerated violations" of § 3729, "including subsections (a)(1)(B), (a)(1)(C), (a)(1)(D), and (a)(1)(G)"; and (2) unlawfully retaliating against Briseno in violation of § 3730(h). *Id.* at 1.

## LEGAL STANDARDS

### A. RULE 12(b)(6)

Rule 12(b)(6) authorizes dismissal of a complaint when the plaintiff has failed to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* At this initial pleading stage, I am required to accept as true all well-pleaded factual allegations in the Amended Complaint. *See Twombly*, 550 U.S. at 555–56.

### B. RULE 9(b)

Because FCA claims involve allegations of fraud, they must comply with the heightened pleading requirements of Rule 9(b). *See Grubbs*, 565 F.3d at 185. That rule requires a party alleging fraud to "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). More specifically, Rule 9(b) requires that a complaint detail "the who, what, when, and where before access to the discovery process is granted." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (cleaned up). The Fifth Circuit has mandated that Rule 9(b)'s heightened standard for pleading is to be applied "with bite and without apology." *Grubbs*, 565 F.3d at 185 (quotation omitted). At a bare minimum, an FCA plaintiff must allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 190. The failure of a plaintiff to plead in compliance with Rule 9(b) is considered a failure to

state a claim under Rule 12(b)(6). *See United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997).

## ANALYSIS

**A. BRISENO DOES NOT SUFFICIENTLY ALLEGE LIABILITY UNDER THE FCA**

To properly plead an FCA case, Hillcroft must allege (1) "a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 467 (5th Cir. 2009) (quotation omitted).[1]

Even if I assume, for the sake of argument, that Briseno has satisfied the third and fourth elements, it is abundantly clear that she has failed to sufficiently plead the first two elements: fraud and scienter. This failure is fatal to Briseno's FCA claim. I will address the fraud and scienter elements in turn.

### 1. Fraud

It is well settled that "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby must be stated in a complaint alleging violation of the FCA in order to satisfy Rule 9(b)." *United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 873 (5th Cir. 2008) (quotation omitted). Hillcroft argues that Briseno falls far short of this standard by failing to "identify a single individual allegedly involved in an allegedly fraudulent course of conduct" or "any individual who allegedly made a false statement." Dkt. 29 at 12 (emphasis omitted). I agree with Hillcroft. Briseno's list of 50 alleged false claims merely identifies the date of the alleged false representations and provides "vague, factless

---

[1] Hillcroft complains at length about Briseno's failure to clearly articulate which provisions of the FCA are at issue. *See* Dkt. 29 at 9–11. I agree with Hillcroft that Briseno's vague allegations raise concerns related to Rule 9(b)'s particularity requirements. Instead of attempting to determine which subsections are at issue, I will use the *Longhi* test to decide whether Briseno has alleged general liability under the FCA.

conclusions that Hillcroft was engaged in a fraudulent scheme." *Id*. She provides nothing more to give rise to an inference of fraud.

In *United States ex rel. Grubbs v. Kanneganti*, the Fifth Circuit concluded that the relator's complaint alleging fraud satisfied Rule 9(b) as to a group of doctors:

> The complaint sets out the particular workings of a scheme that was communicated directly to the relator by those perpetrating the fraud. [The relator] describes in detail, including the date, place, and participants, the dinner meeting at which two doctors in his section attempted to bring him into the fold of their on-going fraudulent plot. He alleges his first-hand experience of the scheme unfolding as it related to him, describing how the weekend on-call nursing staff attempted to assist him in recording face-to-face physician visits that had not occurred.

565 F.3d at 191–92.

Here, in stark contrast to *Grubbs*, Briseno neither names any providers in her complaint nor alleges any activity that forms the basis of her belief that the invoices were fraudulent. Rather, Briseno states that she "discovered hundreds of instances in which false claims were being submitted to Medicare" and that Hillcroft's "business enterprise abuses the Medicare program, including, but not limited to, making false claims and knowing [sic] failing to truthfully indicate material facts on the invoices for payment." Dkt. 27 at 5, 10. These conclusory statements fail to shed light on *how* Briseno knew the invoices were fraudulent.

Because I cannot take Briseno's unsupported conclusion that Hillcroft submitted fraudulent invoices at face value, I find that Briseno fails to sufficiently plead a false statement or fraudulent course of conduct. On this basis alone, Briseno's claims should be dismissed.

### 2. Scienter

Hillcroft next argues that Briseno "has not . . . even attempted to" show scienter. Dkt. 29 at 16. To plead scienter under the FCA, Briseno must allege facts establishing that Hillcroft had either "(1) actual knowledge of falsity, (2) acted with deliberate ignorance of the truth or falsity of the information provided, or (3) acted

7

with reckless disregard of the truth or falsity of the information provided" to the United States Government. *Longhi*, 575 F.3d at 468; *see also* 31 U.S.C. § 3729(b)(1)(A). "To adequately plead scienter, a plaintiff must set forth specific facts that support an inference of fraud." *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 385 (5th Cir. 2003) (cleaned up). The scienter requirement is "rigorous." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192 (2016).

Briseno makes only two allegations in the Amended Complaint related to Hillcroft's knowledge:

- "[Hillcroft]'s business enterprise abuses the Medicare program, including, but not limited to, making false claims and knowing [sic] failing to truthfully indicate material facts on the invoices for payment." Dkt. 27 at 10.

- "[Hillcroft], for the purpose of defrauding the United States, knowingly made, used and/or caused to be made or used, false statements and records to be approved under the Medicare program." *Id.* at 11.

Each of these allegations, as Hillcroft argues, "are textbook examples of the general and conclusory statements insufficient to constitute a particularized pleading sufficient to pass muster" under Rule 9(b) and the FCA. Dkt. 29 at 17. In response to these arguments, Briseno merely refers to the conclusory statements in the Amended Complaint:

> [Briseno] alleges that [Hillcroft] carried out its scheme with scienter. To be sure, [Briseno] provides several examples of its direct knowledge in which [Hillcroft] is being paid with knowledge of the false claims.

Dkt. 35 at 5.

To be clear, even at the pleading stage, more is required than conclusory statements of knowledge. I cannot read between the lines of Briseno's Amended Complaint to surmise *how* she learned that Hillcroft *knowingly* submitted false claims. At this time, Briseno has alleged no facts that would lead me to believe that

8

Hillcroft's alleged actions were anything more than inadvertent. *See Grubbs*, 565 F.3d at 192 (finding relator failed to sufficiently plead hospital's alleged involvement in the scheme because the complaint did not show that the hospital acted with the requisite intent: "The Hospital may have been inadvertently and in the normal course of business processing the claims of services fraudulently exaggerated by its doctors. We have no basis for inferring otherwise.").

Accordingly, Briseno fails to sufficiently plead scienter. This too is an independent and sufficient reason to dismiss Briseno's claims.

****

Briseno's failure to adequately plead fraud and scienter is fatal to her FCA claim. Therefore, Briseno's FCA claim should be dismissed with prejudice.

**B.    BRISENO FAILS TO ADEQUATELY PLEAD A PRIMA FACIE CASE OF RETALIATION**

"[T]o encourage those with knowledge of fraud to come forward," the FCA contains a "whistleblower" provision. *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994). It provides that an employee "shall be entitled to all relief necessary" if the employee was "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against . . . because of lawful acts done by the employee . . . in furtherance of an action under this section to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h)(1).[2]

To establish a prima facie case of retaliation, a plaintiff must show "(1) that he engaged in protected activity; (2) that the employer knew about the protected activity; and (3) retaliation because of the protected activity." *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 241 (5th Cir. 2019). If a plaintiff can establish a prima facie case, then "the burden shifts to the employer to state a legitimate, non-

---

[2] Briseno's failure to adequately plead an FCA violation, standing alone, "does not support dismissal of a retaliation claim . . . because conduct may be protected regardless whether it leads to an actual *qui tam* action." *United States ex rel. Johnson v. Raytheon Co.*, 395 F. Supp. 3d 791, 797 (N.D. Tex. 2019); *see also United States ex rel. Patton v. Shaw Servs., L.L.C.*, 418 F. App'x 366, 371, 371 n.5 (5th Cir. 2011) (analyzing relator's retaliation claim despite his failure to create a genuine issue of material fact as to his FCA claim).

9

retaliatory reason for its decision." *United States ex rel. King v. Solvay Pharms., Inc.*, 871 F.3d 318, 332 (5th Cir. 2017) (quotation omitted). "After the employer articulates a legitimate reason, 'the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation.'" *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019) (quoting *Garcia*, 938 F.3d at 241).

Briseno alleges that Hillcroft constructively discharged her for complaining about fraudulent invoices. Briseno claims that she "could no longer bear" Hillcroft's retaliatory acts, which included micromanaging and increasing her workload and becoming "highly critical" of her work performance. Dkt. 27 at 10. To determine whether the alleged retaliation gives rise to liability under the FCA, I will address each element of a prima facie case of retaliation in turn.

### 1. Briseno's Complaints Do Not Qualify as Protected Activity

"To qualify as protected activity under the whistleblower provision, the activity must be 'in furtherance of' uncovering fraud or potential fraud against the Government." *United States ex rel. Johnson v. Kaner Med. Grp., P.A.*, 641 F. App'x 391, 395 (5th Cir. 2016) (quoting 31 U.S.C. § 3730(h)(1)). "For internal complaints to constitute protected activity 'in furtherance of' a *qui tam* action, the complaints must concern false or fraudulent claims for payment." *Patton*, 418 F. App'x at 372.

Here, the Amended Complaint alleges that Briseno "made several complaints regarding the fraudulent billing and repeatedly attempted to have [Hillcroft] correct its fraudulent billing practices"; "emailed her manager regarding instances of fraudulent billing on, but not limited to, January 29, 2019, February 7, 2019, February 8, 2019, and on February 11, 2019"; and "[a]fter being repeatedly ignored about her concerns, [Briseno] then sent a letter to [Hillcroft's] Human Resources Department and its [chief operating officer] on February 15, 2019, again alerting [Hillcroft] of the fraudulent billing alleged in this action." Dkt. 27 at 10. Hillcroft argues that these "bare-bones allegations—without any mention

of the substance of [Briseno's] alleged email communications or letter—are insufficient to show that she engaged in protected activity." Dkt. 29 at 21.

In *United States ex rel. Johnson v. Raytheon Co.*, the relator "expressed concerns to supervisors about some aspects of [projects related to Raytheon's defense contract with the Navy], including questionable project statuses," as well as his concerns over Raytheon's possible misrepresentations over the provisions of new software to the Navy. 395 F. Supp. 3d at 798. Yet, Judge Sidney Fitzwater in the Northern District of Texas found that the relator did not adequately plead that he engaged in a protected activity because the allegations did not suggest that the relator was trying to expose fraud. *Id.*

In *United States ex rel. George v. Boston Scientific Corp.*, the relator alleged that "on two occasions, she asked in employee meetings whether the federal government would view Boston Scientific's marketing of the FlexView device for off-label uses as fraud on the government." 864 F. Supp. 2d 597, 606 (S.D. Tex. 2012). After reviewing these allegations, Judge Lee Rosenthal found that the relator had adequately alleged that she engaged in a protected activity because she did more than "merely criticize" Boston Scientific's marketing practices:

> Through these questions, [the relator] did not directly say to Boston Scientific, "Your marketing of the FlexView device is fraudulent and unlawful." When viewed in context, however, her questions "are sufficient to support a reasonable conclusion that [Boston Scientific] could have feared being reported to the government for fraud or sued in a *qui tam* action by [the relator]" or by other employees attending the presentations.

*Id.* at 607 (quoting *United States ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1304 (11th Cir. 2010)).

I think that Briseno's allegations lie somewhere between *Raytheon Co.* and *Boston Scientific Corp.* Without any examples of the actual substance of Briseno's complaints to Hillcroft, however, I cannot determine whether Hillcroft reasonably could have feared being reported to the government for fraud. In *Boston Scientific Corp.*, the relator questioned—in front of other employees—the legality of the

11

company's off-label marketing practices. *See* 864 F. Supp. 2d at 607. Notably, the relator and the other employees had specifically been told that the government viewed such practices as fraud against the government. *See id.* The court found that the relator's pointed questions raised the "distinct possibility" that the relator or the employees who attended the presentation might bring an FCA case against Boston Scientific Corp. *Id.* Here, in contrast, there are no allegations that Briseno specifically questioned the legality of Hillcroft's invoices or went any further than using the word "fraudulent." It would not have taken much effort on Briseno's part to provide these details, if they existed. Yet, Briseno did not cure these defects in her Amended Complaint, and her only response to Hillcroft's argument was that she was "clearly retaliated against" by Hillcroft. Dkt. 35 at 7 (emphasis omitted). For these reasons, I think this issue falls more in line with *Raytheon Co.* than *Boston Scientific Corp.* Accordingly, Briseno has failed to adequately allege involvement in a protected activity. This is an independent and sufficient reason to dismiss Briseno's retaliation claim.

### 2. Briseno Fails to Allege That Hillcroft Knew About Briseno's "Protected Activity"

The second element of a prima facie FCA retaliation claim requires a relator to "show the employer had knowledge the employee engaged in protected activity." *Robertson*, 32 F.3d at 951 (quotation omitted). "Such notice may be accomplished by any action that 'put the employer on notice that litigation is a reasonable possibility,' including internal complaints to supervisors." *Vaughn v. Harris Cnty. Hosp. Dist.*, No. 4:17-cv-2749, 2021 WL 4464190, at *5 (S.D. Tex. Aug. 4, 2021) (quoting *Bos. Sci. Corp.*, 864 F. Supp. 2d at 608). Yet, such conduct does not sufficiently put the employer on notice "if the protected activity is consistent with the performance of the employee's job duties." *Id.* (cleaned up).

Briseno, as an accounts receivable specialist at Hillcroft, was responsible for "sending claim invoices to Medicare and private insurance for payment on a daily basis." Dkt. 27 at 4. Hillcroft argues that "[t]o the extent [Briseno] raised concerns

regarding any invoices, doing so was consistent with her duties as an AR Specialist, to identify, research, and resolve claim-related issues prior to sending invoices to Medicare and private insurance." Dkt. 29 at 22–23. Hillcroft further contends that Briseno "never pleads how her actions went beyond her duties to put Hillcroft on notice of her alleged protected activity." *Id.* at 23. Briseno has no notable response to this argument.

I agree with Hillcroft. Again, without knowing details regarding the substance of the complaints that Briseno sent to Hillcroft, it is impossible for me to determine whether Hillcroft was put on notice that Briseno reasonably could resort to litigation. Let me be clear: I am not saying that Briseno was required to make an express or implied threat of a *qui tam* action. I understand that such a requirement "would impose an unrealistic requirement on employees." *Bos. Sci. Corp.*, 864 F. Supp. 2d at 608 (quotation omitted). At the same time, I cannot reasonably conclude based on Briseno's threadbare allegations that Hillcroft was put on notice of a "protected activity." This conviction is made even stronger by Briseno's scant response to Hillcroft's arguments.[4] Therefore, I find that Briseno fails to sufficiently allege that Hillcroft had knowledge of her "protected activity." This is also an independent and sufficient reason to dismiss Briseno's retaliation claim.

### 3. Briseno Cannot Show That She Was Constructively Discharged Because of Her "Protected Activity"

The last element of a prima facie retaliation claim under the FCA requires a relator to show that she was discriminated against because of her involvement in a protected activity. *See Patton*, 418 F. App'x at 371–72. In other words, an employer

---

[4] Briseno's entire response to Hillcroft's arguments on the retaliation claim is two sentences long:

> [Briseno] was clearly retaliated against for opposing fraud, illegal activity, and otherwise blowing the whistle by [Hillcroft] constructively terminating her employment. [Briseno] has sufficiently alleged this private right of action to a degree that passes muster under [Hillcroft's] Motion.

Dkt. 35 at 7.

must be aware that the relator engaged in protected activity "possess[ed] the retaliatory intent necessary to establish a violation of the whistleblower provision of the [FCA]." *Robertson*, 32 F.3d at 952.

Given that Briseno did not adequately allege involvement in a protected activity nor Hillcroft's knowledge of that protected activity, it follows that no causal connection exists between her constructive discharge and her allegedly protected activity. *See id.*; *see also United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 729 (10th Cir. 2006) (relator must allege notice in order "to establish that [her] termination was 'because of' her protected activity"), *abrogated on other grounds by Conchise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507 (2019).

Accordingly, Briseno cannot establish a prima facie case of retaliation. This claim should be dismissed.

## CONCLUSION

For the reasons provided above, I recommend that the Court **GRANT** Hillcroft's Motion to Dismiss (Dkt. 29) and **DISMISS** Briseno's claims with prejudice to refiling.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 5th day of December 2022.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE